UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
LUANDA HAPTONSTAHAL,                )
                                    )   C.A. No. 18-184 WES
            Plaintiff,              )
                                    )
      v.                            )
                                    )
PAWTUCKET POLICE DEPARTMENT,        )
                                    )
            Defendant.              )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

This case is before the Court on a motion from defendant
Pawtucket Police Department to dismiss (ECF No. 5) the complaint
(ECF No. 1) filed by plaintiff Luanda Haptonstahal. The Court GRANTS
the motion for the following reasons.

I.   Background

Haptonstahal's complaint consists of 33 handwritten pages
containing 103 paragraphs, some of which are illegible. The legible
portion centers around three incidents. The first is an incident in
May 2017 involving Pawtucket officers asking Haptonstahal to lower
the volume on her television. (Compl. ¶ 4.) When she failed to
comply, the officers wrote her two citations, and then allegedly
loitered on her porch. (Id. ¶¶ 4-5, 8.)

The second incident occurred in June 2017 when a Pawtucket
officer arrested Haptonstahal and held her in a hospital for nine
days. (Id. ¶ 62.) Haptonstahal alleges that "Officer Duffy had his

team raid her home" (id. ¶ 63); that the officers deliberately left her pets in the home to die (id. ¶ 64); and that a female officer "molested" her by "squeezing her braless breasts too hard" (id. ¶ 65). Also as part of this incident, Haptonstahal alleges that "Pawtucket Prosecutors . . . in Providence District Court brain washed the justice to demand that she have mental evaluation against her will" (id. ¶ 52, 62), and that if not for Officer Duffy forcing her to be held for nine days, his conspiracy to break into her home would not have succeeded (id. ¶ 80).

The third constellation of events involved the police knocking on her door at various points in January 2018. (Id. ¶ 24.) Haptonstahal never opened the door for the police, but heard from her attorney that the officers were there because she had made too many calls to the police. (Id. ¶¶ 25, 27, 29.)

## II. Discussion

The complaint purportedly contains fifteen counts.[1] (ECF No. 1.) Since filing the complaint, Haptonstahal has thrice moved to amend.[2] (ECF Nos. 11, 14, 16.) Pawtucket moves to dismiss, primarily

---

[1] The Court treats the intelligible of these below, renumbering them when necessary to aid understanding. Any other purported claim is dismissed as either "[1] so poorly composed as to be functionally illegible . . . [or 2] so baldly conclusory that it fails to give notice of the basic events and circumstances of which the plaintiff complains." Shuster v. Oppelman, 962 F. Supp. 394, 395 (S.D.N.Y. 1997).

[2] The proposed amendments are DENIED as futile; none adds enough to the initial complaint to state a claim. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (holding that

because the complaint is "largely indecipherable due to the illegibility of what Defendant presumes is Plaintiff's own handwriting." (Mem. in Supp. of Mot. to Dismiss 1, ECF No. 5-1.) The Court has deciphered enough of the complaint – both the facts stated above and the legal claims addressed below – to say it fails to state a plausible claim. See Damon v. Moore, 520 F.3d 98, 103 (1st Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

A. Count I: Sexual Assault, Willful Trespass, and Stalking

Haptonstahal brings claims for sexual assault, willful trespass, and stalking, but identifies no statutory basis for a private right of action under the alleged criminal statutes. See Cort v. Ash, 422 U.S. 66, 79–80 (1975) (holding no private action under criminal statutes absent clear statutory basis for such inference); see also Linda R.S. v. Richard D., 410 U.S. 614, 619, (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Therefore, these claims fail.

B. Count II: Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") states that "no qualified individual with a disability shall, by reason of such

_____

a motion to amend may be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted"). Consequently, the Court's discussion is of Pawtucket's motion to dismiss the initial, operative complaint.

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A qualified individual under the ADA is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131.

Here, Haptonstahal has not alleged facts, taken as true, that would make her a qualified individual. Indeed, Haptonstahal claims she does not have a disability. (See Compl. ¶ 83.) She has not stated an ADA claim.

C.    Count III:  Deprivation of Right to Privacy

There exists in Rhode Island a statutory right to privacy in four areas:  one's physical solitude, "appropriation of one's name or likeness," unreasonable publicity of one's private life, and "publicity that reasonably places another in a false light before the public." See R.I. Gen. Laws § 9-1-28.1; Lamarque v. Centreville Sav. Bank, 22 A.3d 1136, 1140 (R.I. 2011).

The complaint contains no facts pertaining to any of these four; this claim fails.

D.   Count IV:  Conspiracy to Interfere with Civil Rights

Haptonstahal attempts a claim under 42 U.S.C. Section 1985.  To do so successfully, she "must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege."  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Here, instead of pleading any facts pertaining to the above elements, Haptonstahal has relied on mere conclusory and unsupported allegations, which are not sufficient.  See Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 626 (D.N.J. 2005).

E.   Count V:  Violation of the Fourth Amendment and 42
     U.S.C. Section 1993

Haptonstahal brings a claim under 42 U.S.C. Section 1993, but this statute was repealed in 1957.  See Pub. L. 85-315, Pt. III, § 122, 71 Stat. 637. (1957).  So the Court will regard this count as a Section 1983 claim in which Haptonstahal alleges she was deprived of her Fourth Amendment rights.  Section 1983 grants individuals the right to sue those acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . [for] the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42

U.S.C. § 1983. To prevail, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).

Here, not only are Haptonstahal's conclusory accusations unsupported by facts, her claims are misguided because "liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." See Kelley v. Laforce, 288 F.3d 1, 9 (1st Cir. 2002) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). And she has not alleged that her purported constitutional injuries were the result of the Pawtucket Police Department's policy or custom.

F.   Count VI:  Defamation

For a defamation plaintiff to prevail under Rhode Island law, "she must prove the following elements:  (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages." Trainor v. The Standard Times, 924 A.2d 766, 769 (R.I. 2007) (citing Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003)).

Haptonstahal has accused police officers of calling her crazy, and informing her neighbors that she is crazy.  (Compl. ¶ 82.)

6

Haptonstahal claims her reputation in the community has been harmed, and her desire to write poetry diminished. (Id. ¶¶ 83, 90.) But pursuant to the public-duty doctrine, Rhode Island government entities are – subject to exceptions not applicable here – shielded from tort liability when engaged in activities which "could not and would not in the ordinary course of events be performed by a private person at all." O'Brien v. State, 555 A.2d 334, 336–37 (R.I. 1989); see also Gray v. Derderian, 400 F. Supp. 2d 415, 427 (D.R.I. 2005). Such activities include "the exercise of the police power through officers authorized and empowered by the state to perform a police function." O'Brien, 555 A.2d at 337. Because Haptonstahal's allegations concern the behavior of police officers while performing a police function, her tort claim is barred by Rhode Island's public-duty doctrine.

III. Conclusion

For these reasons, Pawtucket's motion to dismiss (ECF No. 5) is GRANTED.

IT IS SO ORDERED.

_WEsmith_
_____
William E. Smith
Chief Judge
Date: November 1, 2018